## HOLT and others *v.* KEELER and another.

(*Circuit Court, D. New York.* August 1, 1882.)

PATENT—VALIDITY OF REISSUE.

In the descriptive matter in the specification in the original patent for an improvement in making wheels, granted January 23, 1866, it was said that "the type wheel is provided with yielding rims or flanges, made of India rubber or other elastic material, so that the types can be depressed on the surface to be marked with the requisite force to produce the desired impression. * * * This type wheel * * * is provided with projecting flanges, *b*, made of India rubber or other soft and elastic material, so that by pressing the wheel down upon the surface to be marked the types are brought into contact with said surface with the requisite force to produce the desired impression;" and. claim No. 2 was as follows: "(2) The yielding flanges, *b*, on type wheel, A, constructing and operating substantially as and for the purpose described." October 26, 1875, a reissue was granted, and in the specification the descriptive matter was altered to the following: "The type wheel is provided with rims or flanges, preferably made of India rubber or other elastic material, so that the types can be depressed on the subject to be marked with the requisite force to produce the desired impression. The rims or flanges seem to keep the surface of the type in a plane parallel with the surface to be marked, which is otherwise often difficult, owing to the different lengths of lines of type, or the position of the type at the side of the surface of the type wheel. * * * This type wheel * * * is provided with projecting flanges, *b*." The claims of the reissue were these: "(2) The combination with a handle of a type wheel provided with flanges for keeping the plane of the type paralled with the surface of the article to be marked; (3) a type wheel provided with yielding flanges, constructed and operating substantially as and for the purpose described." The wheels used by the defendants would not have infringed claim 2 or 3 of the original patent, but would infringe claim No. 2 of the reissue, because they have a handle and rigid flanges which keep the plane of the type parallel with the surface of the article to be marked. *Held,* that if there was any error in the original patent in not setting forth and claiming rigid flanges, or in stating that the flanges were to be elastic, and were to be so arranged that the types were to be out of contact with the surface to be marked until by the yielding of the flanges through pressing down the wheel the types were to be brought in contact with such surface, the error was a plain one, apparent at once to the patentee, and as capable of being promptly corrected then as by a reissue after a lapse of more than nine years, during which the manufacture of wheels substantially the same as those of the defendants had been entered upon, there being no infringement of any claim of the original patent in respect to flanges, and that claim No. 2 of the reissue could not be upheld as covering any flanges but such as were shown in the original patent, consequently the bill must be dismissed, with costs.

*George W. Hey,* for plaintiffs.

*James A. Allen,* for defendants.

BLATCHFORD, Justice. This is a suit in equity brought on reissue of letters patent No. 6,714, granted to Horace Holt, one of the

plaintiffs, October 26, 1875, for an "improvement in marking wheels;" the original patent, No. 52,169, having been granted to him January 23, 1866. As questions concerning the validity of the reissue are raised, it will be useful to place the two specifications side by side. The left-hand one is the specification of the original patent, and the right-hand one is that of the reissue. In each the parts which are not found in the other are in italics:

ORIGINAL.

"Figure 1 represents a side elevation of this invention. Figure 2 is a sectional plan or top view of the same. Similar letters of reference indicate like parts. This invention consists in a revolving type wheel, arranged in a suitable handle in combination with an ink roller, in such a manner that, by carrying said type wheel over the cover of a box, or over any other surface, the types on said wheel produce an impression, and the marking of a box or other article can be effected neatly and distinctly, with little loss of time. The ink roller is composed of a hollow cylindrical reservoir, perforated with small holes, and surrounded by a strip of cloth or other absorbent material, so that the same is capable of holding a supply of ink for a large number of impressions. The type wheel is provided with *yielding* rims or flanges made of India rubber or other elastic material, so that the types can be depressed on the surface to be marked with the requisite force to produce the desired impression,

*and* a coiled or other spring *is* applied to said type wheel *in such a manner that it carries* the same back, after

REISSUE.

Figure 1 represents a side elevation of this invention. Figure 2 is a sectional plan or top view of the same. Similar letters of reference indicate like parts. This invention consists in a revolving type wheel, arranged in a suitable handle, in combination with an ink roller,· in such a manner that, by carrying said type wheel over the cover of a box, or over any other surface, the types on said wheel produce an impression, and the marking of a box or other article can be effected neatly and distinctly, with little loss of time. The ink roller shown *in the drawings* is composed of a hollow cylindrical reservoir, perforated with small holes, and surrounded by a strip of cloth or other absorbent· material, so that the same is capable of holding a supply of ink for a large number of impressions. The type wheel is provided with rims or flanges, *preferably* made of India rubber or other elastic material, so that the types can be depressed on the surface to be marked with the requisite force to produce the desired impression. *The rims or flanges serve to keep the surface of the types in a plane parallel with the surface to be marked, which is otherwise often difficult, owing to the different lengths of lines of type, or the position of the type at the side of the surface of the type wheel.* It is also advantageous to use a coiled or other spring, *which, when* applied to said type wheel, is

each impression, to the starting point, and thereby the types are brought in contact with the ink roller, and supplied with the requisite quantity of ink for the subsequent impression; and, furthermore, the type wheel readjusts itself in the required position for starting.

A represents a wheel made of cast iron or other suitable material, and arranged so that the desired types can be applied to or inserted in its periphery, either permanently, by means of a strip of copper or other suitable material, or so that said types can be changed at pleasure. This type wheel is mounted on an axle, *a*, which has its bearings in a forked handle, B, and it is provided with projecting flanges, *b*, *made of India rubber, or other soft and elastic material, so that by pressing the wheel down upon the surface to be marked, the types are brought in contact with said surface with the requisite force to produce the desired impression.*
As the wheel revolves, the types on its circumference come in contact with the surface of the ink roller, C, which is mounted on an axle, *e*, having its bearings in the extreme ends of the forked handle, B. Suitable springs, *d*, draw the ink roller towards the type wheel, and, by disconnecting said springs, the ink roller can be removed from its seat.

*arranged to carry* the same back, after each impression, to the starting point, and thereby the types are brought in contact with the ink roller, and supplied with the requisite quantity of ink for the subsequent impression, and, furthermore, the type wheel readjusts itself in the required position for starting.

A represents a wheel made of cast iron or other suitable material, and arranged so that the desired types can be applied to or inserted in its periphery, either permanently, by means of a strip of copper or other suitable material, or so that said types can be changed at pleasure. This type wheel is mounted on an axle, *a*, which has its bearings in a forked handle, B, and it is provided with projecting flanges, *b*.

As the wheel revolves, the types on its circumference come in contact with the surface of the ink roller, C, which is mounted on an axle, *e*, having its bearings in the extreme ends of the forked handle, B. Suitable springs, *d*, draw the ink roller towards the type wheel, and, by disconnecting said springs, the ink roller can be removed from its seat. *Each end of the fork of the handle has two slots,— one long and the other short,—which form main and secondary bearings for the journals of the inking roller. When it is desired that the roller and wheel should be in contact, the journals of the former should be in the long slots, as shown in the drawing, which represents the roller in its normal position; but as it is sometimes necessary that the marking wheel and*

roller should revolve independent of each other, as when distributing ink on the latter, or when it is being used on a separate flat form, or when either the wheel or the roller, or both, are being cleaned, then the journals of the latter should be placed in the short slots or secondary bearings.

Said ink roller may be made solid, similar to ordinary printers' rollers; but I prefer to make the same of a hollow cylindrical reservoir, *e,* to which access can be had by removing one of its heads. This reservoir is perforated with a large number of small holes, *and it* is surrounded by a strip, *f,* of cloth or other absorbent material. *By these means* a large supply of ink can be carried in the roller, and the marking wheel produces a number of impressions before it is necessary to recharge the same. A spring, *g,* applied to the axle of the wheel, A, (see figure 1,) carries the same back, until the stud, *h,* in the wheel, comes in contact with a pin, *i,* projecting from the inner surface of the forked handle. By this stud and pin the starting point of the wheel is defined, and, by the action of the spring, the wheel is carried back to this starting point after each operation. In moving back, the types, being in contact with the ink roller, are supplied with the requisite quantity of ink for the subsequent operation. It is obvious that the starting point of the type wheel can be determined by other means besides the stud, *h,* and pin, *i.* By this simple device a large number of boxes or other packages can be marked neatly and distinctly with great dispatch.

Said ink roller may be made solid, similar to ordinary printers' rollers; but *I have shown in the drawings* a hollow cylindrical reservoir, *e,* to which access can be had by removing one of its heads. This reservoir is perforated with a large number of small holes. *The roller* is surrounded by a strip, *f,* of cloth or other absorbent material. *By means of the reservoir, if used,* a large supply of ink can be carried in the roller, and the marking wheel produces a number of impressions before it is necessary to recharge the same. A spring, *g,* applied to the axle of the wheel, A, (see figure 1,) carries the same back until the stud, *h,* in the wheel, comes in contact with a pin, *i,* projecting from the inner surface of the forked handle. By this stud and pin the starting point of the wheel is defined, and, by the action of the spring, the wheel is carried back to this starting point after each operation. In moving back, the types, being in contact with the ink roller, are supplied with the requisite quantity of ink for the subsequent operation. It is obvious that the starting point of the type wheel can be determined by other means besides the stud, *h,* and pin, *i.* By this simple device a large number of boxes or other packages can be marked neatly and distinctly with great dispatch. *I am aware that a patent was granted Edwin Crowley, dated July* 8, 1856, *in which was shown a handle holding a type wheel and several inking rollers,*

I claim as new, and desire to secure by letters patent:

1. The combination of the type wheel, A, inking *roller, C, and ink reservoir, e, all constructed, arranged, and operating as specified.*

2. *The yielding flanges, b, on type wheel, A, constructed and operating substantially as and for the purpose described.*

3. *The spring, g, applied in combination with the type wheel, A, stud, b, and pin, i, or their equivalents, substantially as and for the purpose set forth.*

arranged with a distributing band. *This I do not claim; but* I claim as new, and desire to secure by letters patent:

1. The combination, with a frame and handle, of *a type wheel, provided with a stud-pin, for defining the starting and stopping points, and an inking roller, constructed and operating substantially as specified.*

2. *The combination, with a handle, of a type wheel provided with flanges for keeping the plane of the type parallel with the surface of the article to be marked.* .

3. *A type wheel provided with yielding flanges, constructed and operating substantially as and for the purpose described.*

4. *A spring in combination with a type wheel and stop pin, or its equivalent, for retracting the type wheel to its starting point, substantially as and for the purpose set forth.*

5. *The combination of a type wheel with a combined inking roller and ink reservoir,' constructed substantially as and for the purpose described.*

6. *The combination of a handle and type wheel with a spring, for attracting the type wheel to its starting point, substantially as described.*

7. *In combination with an inking roller and its usual bearings, secondary bearings so arranged that the roller may revolve independently of the wheel, substantially as set forth.*

The answer in this case alleges that the surrender of the original patent was not made on account of any defect or insufficiency of the specification, but with the fraudulent design of enlarging the claims, so as to embrace inventions not made by him prior to the time when the original patent was issued, and which are not embraced therein; that the reissue, in its description and claims, embraces matters claimed therein as the invention of Holt which were not invented by him prior to the issue of the original patent, and which are not

described or alluded to therein, such enlargement of the claims of the reissue being produced substantially by the insertion of claims 1, 2, and 7, which embrace new matter not shown in the claims, specification model, or drawing of the original patent; and that the reissued patent is for a different invention from the original patent, and is void.

The only claims in the reissue which it is now contended have been infringed are claims 2 and 3. In the specification of the original patent, what is said about the flanges is this:

"The type wheel is provided with yielding rims or flanges, made of India rubber or other elastic material, so that the types can be depressed on the surface to be marked with the requisite force to produce the desired impression. * * * This type wheel * * * is provided with projecting flanges, *b*, made of India rubber or other soft and elastic material, so that, by pressing the wheel down upon the surface to be marked, the types are brought in contact with said surface with the requisite force to produce the desired impression."

The claim based on the above descriptive matter is claim 2 of the original, as follows:

"2. The yielding flanges *b*, on type wheel A, constructing and operating substantially as and for the purpose described."

The foregoing descriptive matter is altered in the specification of the reissue to the following:

"The type wheel is provided with rims or flanges, preferably made of India rubber or other elastic material, so that the types can be depressed on the subject to be marked with the requisite force to produce the desired impression. The rims or flanges serve to keep the surface of the types in a plane parallel with the surface to be marked, which is otherwise often difficult owing to the different lengths of lines of type, or the position of the type at the side of the surface of the type wheel. * * * This type wheel * * * is provided with projecting flanges, *b*."

The claims of the reissue, based on the foregoing descriptive matter in it, are these:

"2. The combination, with a handle, of a type wheel provided with flanges, for keeping the plane of the type parallel with the surface of the article to be marked. 3. A type wheel provided with yielding flanges, constructed and operating substantially as and for the purpose described."

There is in the original a distinct statement that the flanges are made of India rubber, or other elastic, yielding material, and there is no suggestion that they can consistently with the ideas of the

invention be made of any non-elastic, non-yielding material. They are also stated to be projecting flanges. This expression, with nothing more, would be satisfied by flanges projecting from and beyond the face of the type wheel, and would not necessarily mean that the flanges should project to a distance beyond the line of the impression faces of the types. But the expression is, that they are projecting flanges made of elastic material "*so that*, by pressing the wheel down on the surface to be marked, the types are brought in contact with said surface with the requisite force to produce the desired impression." This clearly implies that until the wheel is pressed down on the surface to be marked, the types are out of contact with that surface, because they are raised above it by reason of the fact that the flanges project further from the face of the wheel than the types project from said face; and that, by reason of the fact that the flanges are elastic and yielding, the pressing down of the wheel will cause the flanges to be compressed and to yield, and will allow the types to come into contact with the surface to be marked. It is true that figure 2 of the drawings of the original patent shows the face of the type projecting from the wheel to a greater distance than the flanges project from it. But in figure 2 of the drawings of the reissue the face of the type does not appear to project from the wheel to a greater distance than the flanges project from it.

Mr. Stark, an expert for the defendants, testifies that figure 2 of the drawings of the reissue shows the flanges to project more than the types, and that if they did not, the types could not be depressed in "the surface to be marked" to accomplish the result set forth in the specification. On the other hand, Mr. Robertson, an expert for the plaintiffs, testifies that he thinks the drawings of the reissue are intended to represent the types as on or about the same level as the flanges; that the word "depressed" in the connection in which it is used means that the types must be depressed into the surface of the material; and that this where hard tpyes were used would necessitate the yielding of the flanges. It is very clear, however, that where hard types are used with elastic flanges, in the Holt wheel the flanges must project to some extent beyond the faces of the types in order to be operative as elastic flanges, unless the hard types enter the material that is being marked. Nothing is said in the original specification as to the material of which the types are to be made, whether of hard metal or of elastic material, but it is shown that the model

deposited by Holt in the patent office with his original application showed types of hard metal with elastic flanges. It must therefore be held that the original patent admitted of the use of hard types with elastic flanges. This being so, it follows that the elastic flanges must have been intended to project beyond the faces of hard types in order to be operative, and that such is the meaning of the language of the original specification. That that language was so understood at the time by the inventor is stated by him in his testimony. He says that when the original specification was submitted to him by his solicitor, he objected to that part of it which says, "that force is required to bring the printing surface down to a level or below the flexible bearers so that an impression could be taken, calling his attention to the fact that the bearers on the model were no higher than the face of the types." He says that the elastic flanges in the filed model projected so as to be on a line with the face of the metal types. Yet the specification was allowed to go out in that shape. The inventor does not seem to have used rigid flanges until after the original patent was issued, or to have had any idea when he obtained his original patent of using rigid flanges. One object in obtaining the reissue clearly was to procure a claim which should cover flanges, whether rigid or not, in connection with a handle, while retaining the claim to a type wheel with yielding flanges such as the original patent describes.

One form of the defendants' wheel has rigid flanges which do not project to a distance as far as the faces of the types. In this form of wheel there is a border around the types, but it is a part of the types, and is inked and an impression taken from it, and it is not a flange in the sense of the Holt patent although it is elastic, the types being elastic and the flanges being rigid. In the other form of the defendants' wheel, called the Barnes and Allen wheel, the elastic border is omitted, the types being elastic and the flanges being rigid and not projecting as far as the face of the types. Neither of these forms of wheel would have infringed claim 2 of the original patent; nor does either of them infringe claim 3 of the reissue. They do infringe claim 2 of the reissue, as it stands, because they have a handle and rigid flanges which keep the plane of the type parallel with the surface of the article to be marked, if claim 2 can be construed as covering any flanges but such as were shown in the original patent.

The original patent was granted in January, 1866. The reissue was applied for in March, 1875, and granted in October, 1875. If

there was any error in the original patent in not setting forth and claiming rigid flanges, or in stating that the flanges were to be elastic, and were to be so arranged that the types were to be out of contact with the surface to be marked until by the yielding of the flanges through pressing down the wheel the types would be brought in contact with such surface, the error was a plain one, apparent at once to the patentee, and as capable of being promptly corrected then as after a lapse of more than nine years. Meantime, the manufacture of wheels, substantially the same as those of the defendants, had been entered upon, there being no infringement of any claim of the original patent in respect to flanges. In view of all these facts, claim 2 of the reissue cannot be upheld as a claim covering rigid flanges such as the defendants use. The decisions to this effect are numerous. *Bell* v. *Langles,* 102 N. Y. 128; *Manuf'g Co.* v. *Ladd,* Id. 408; *Manuf'g Co.* v. *Corbin,* 103 N. Y. 786; *Miller* v. *Brass Co.* 3 Morr. Trans. 419; *Bantz* v. *Frantz,* 4 Morr. Trans. 341; *Matthews* v. *Machine Co.* Id. 347; *Johnson* v. *Railroad Co.* Id. 931.

It appears that the inventor held the legal title to his patent for more than five years after it was issued, permitting the use of it by the Secombe Company for a royalty on each wheel. It does not appear that he was not at full liberty to apply for a reissue of it.

In addition to what has been said about the defendants' wheel with the elastic border, it may be said that it extends wholly around the types and does not compass the entire circumference of the wheel, and has the same operation which types in the same place would have, and its face is on the same plane with the faces of the types, and it is a part of the printing surface. In all these respects it differs from what is described in the original specification of Holt.

It follows from these views that the bill must be dismissed, with costs.